**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERIC LEKICH,** | : | |
| **Plaintiff**, | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MUNICIPAL POLICE OFFICERS** | : | |
| **EDUCATIONAL TRAINING** | : | |
| **COMMISSION (MPOETC), et al.**, | : | **No. 08-1048** |
| **Defendants.** | : | |

<u>**MEMORANDUM AND ORDER**</u>

**Schiller, J.**                                                    **February 26, 2009**

_____Plaintiff Eric Lekich brings this action against Defendants Colonel Jeffrey B. Miller, in his

official capacity as chairman of the Municipal Police Officers Educational Training Commission

("MPOETC"),[1]  and Doylestown Borough ("Doylestown").  Plaintiff's First Amended Complaint

alleges that both Defendants regarded him as disabled and discriminated against him on this basis,

in violation of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973 ("RA"),

and the Pennsylvania Human Relations Act ("PHRA").  In addition, Plaintiff asserts Fourteenth

Amendment equal protection claims, pursuant to 42 U.S.C. § 1983, against Defendants.

        Currently before the court are three motions for summary judgment, one filed by the Plaintiff

and one by each of the Defendants.  The Court held oral argument on February 20, 2009.  For the

reasons discussed below, Plaintiff's motion is denied and Defendants' motions are granted.

---

[1] Plaintiff's Amended Complaint named Colonel Jeffrey B. Miller, at the time the Commissioner of the Pennsylvania State Police and, by virtue of his office, chairman of MPOETC.  Colonel Frank Pawlowski has since replaced Miller as police commissioner and therefore is now the proper defendant.  _See_ Fed.R.Civ.P. 25(d)(1).  However, because the parties continue to refer to Miller, not Pawlowski, in their filings, the Court will do the same.

I.     **BACKGROUND**

   A.     **Plaintiff's Summary Judgment Filings**

As a preliminary matter, the Court notes that Plaintiff's counsel failed to provide, as required by the Court's September 4, 2008 Scheduling Order, a Statement of Undisputed Facts.  (*See* Scheduling Order ¶ 5.)  Plaintiff also failed to file a Statement of Disputed Facts in response to the Defendants' Statements of Undisputed Facts.  In accordance with the Court's Order, all undisputed facts stated by Defendants are deemed admitted.  (*See id.* ¶ 5. c.)

Unfortunately, Plaintiff's counsel also failed to include a distinct facts section in his Motion for Summary Judgment.  He instead chose to present throughout his motion a melange of facts, legal conclusions dressed up as facts, and an occasional citation to legal authority.  When facts were presented they were accompanied by citations to as many as ten separate exhibits, many bearing no relation to the factual statement they were purported to support.  Nor did any of these citations reference either the relevant page or line in the exhibit, as required by the Court's Scheduling Order.  Instead, the Court and Defendants were forced to scour exhibits, including affidavits of as many as 173 pages, hunting for facts Plaintiff's counsel claimed lurked somewhere therein.  This failure to cite the record with any specificity runs contrary to the Supreme Court's instructions regarding summary judgment: "[o]f course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and *identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.*" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (emphasis added).

As the Court's Scheduling Order also clearly states, failure of a moving party to follow in

all respects the Court's procedure for summary judgment motions "will result in denial of the motion." (Scheduling Order ¶ 5.) Although the Court could exercise its discretion and deny Plaintiff's motion on this basis, the Court will proceed to an analysis of the merits of all three motions for summary judgment.

### B.    Facts

Lekich graduated from the Montgomery County Community College's Pennsylvania Municipal Police Officers' Training Program in June 2006. (Dep. of Lekich [hereinafter "Pl.'s Dep."] at 13; Pl.'s Mot. Ex. 14 [Diploma].) On July 7, 2006, Plaintiff interviewed with Doylestown Chief of Police James Donnelly for a police officer position. (Pl.'s Dep. at 18-19; Pl.'s Dep. Ex. Lekich-2 [Letter Providing Interview Schedule].) Shortly thereafter, he received a telephone call offering him a part-time position, which he accepted. (Pl.'s Dep. at 19.) Plaintiff reported to the Doylestown Police Department a few days later; at that time he was measured for uniforms and received the forms to be completed for his MPOETC certification application. (*Id.* at 22-24.) By letter dated August 11, 2006, Chief Donnelly informed MPOETC that the police department had conditionally hired Lekich on August 9, 2006. (Pl.'s Dep. Ex. Lekich-3 [Letter of Aug. 11, 2006 from Chief Donnelly to MPOETC].) The hiring was "dependant on his passing both physical and psychological testing." (*Id.*) The police department scheduled appointments for Lekich to see Dr. Jack McEwan, for his general physical exam, and the office of Dr. DeVenuto, for his vision and hearing exam. (Pl.'s Dep. at 29-30.) On August 15, 2006, MPOETC sent Plaintiff a letter notifying him that he was scheduled to take the written certification examination on September 14, 2006. (Pl.'s Dep. at 27-28; Pl.'s Dep. Ex. Lekich-5 [Letter of Aug. 15, 2006 from MPOETC to Lekich].) This written examination is a comprehensive test taken following graduation from the police

academy and is a required component of the MPOETC certification process.  37 PA. CODE §
203.11(a)(11); (Pl.'s Mot. Ex. 2 [Gallaher Dep.] at 49.)

The MPOETC's powers and duties are outlined in 53 PA. CONS. STAT. § 2164 (2008).  These
include the power "[t]o require minimum standards for physical fitness, psychological evaluation
and education as prerequisites to employment as a police officer."  *Id.* § 2164(8).  Pursuant to this
authority, the Commission requires certain qualifications for those seeking police officer
certification.  37 PA. CODE § 203.11.  According to the Pennsylvania Administrative Code:

> Applicants shall have visual acuity of at least 20/70, uncorrected in the stronger eye,
> correctable to at least 20/20; and at least 20/200, uncorrected in the weaker eye,
> correctable to at least 20/40. *In addition, the applicant shall have normal depth and
> color perception* and be free of any other significant visual abnormality.

37 PA. CODE § 203.11(a)(6)(v) (emphasis added).  MPOETC reviews applications for certification
that are assembled and submitted to it by hiring police departments.  (*Id.* § 203.15(c); Def. Miller's
Statement of Undisputed Facts [hereinafter "Def. Miller's Facts"] ¶ 4; Dep. of Major John J.
Gallaher,[2] Executive Director, MPOETC [hereinafter "Gallaher Dep."] at 50.)

On or about August 24, 2006, Dr. McEwan evaluated Lekich and determined that he was
physically fit.  However, Dr. Venuto's office concluded that he lacked "normal color perception."
(Pl.'s Dep. at 28-29; Pl.'s Dep. Ex. Lekich-4 [Physical Examination Report].)  Plaintiff submitted
the completed physical examination forms to Doylestown.  (Pl.'s Dep. at 35-37.)  Shortly after
submitting the forms, Plaintiff received a telephone call from Chief Donnelly, informing him that
he had failed the vision exam and that his conditional offer was being withdrawn.  (*Id.* at 37-41.)

---

[2] Throughout the record, the Executive Director of MPOETC's name is alternately
spelled "Gallagher" and Gallaher."  The Court will use "Gallaher" throughout this opinion as that
is the spelling used by Major Gallaher in letters bearing his name.

Plaintiff inquired about seeing another physician, but was informed that Doylestown did not permit "doctor shopping." (*Id.* at 41.) After this conversation, Plaintiff called MPOETC. He explained that he had not passed the color-vision test and asked whether he could still obtain certification. (*Id.* at 45-48; Dep. of E. Beverly Young [hereinafter "Young Dep."] at 33.) According to Plaintiff, he was told "that there is no recourse whatsoever, that unless I passed this test, I cannot be certified." (Pl.'s Dep. at 52.) He was also informed that he would not be permitted to take the scheduled written certification exam. (Young Dep. at 33.) Plaintiff visited the Doylestown police station and spoke in person with Chief Donnelly, but was again informed that he would not be permitted to retake the vision examination with a new doctor. (*Id.* at 71.)

On October 2, 2006, Dr. John Siegfried examined Plaintiff's eyes, using the Nagel Anomaloscope. (Pl.'s Dep. Ex. Lekich-6 [Letter of Oct. 4, 2006 from Dr. Siegfried].) Dr. Siegfried found that Plaintiff had a "mild [color] defect," causing "minor discrepancies in color appearance compared to those of color normal individuals." (*Id.*) According to Dr. Siegfried, the condition would not cause Plaintiff "to confuse Greens, Yellows, and Reds." (*Id.*) Dr. Siegfried stated:

> I regularly test candidates for the City of Philadelphia, PA who fail the color vision screening test administered as part of their physical examination. These are candidates for police, fire, and corrections officers. For the past 10 years, approximately, the City has accepted Anomalous (mild) color defects in these three categories of employment, but has rejected Dichromats (severe).
>
> In my judgment, this mild defect should not interfere with Mr. Lekich's duties.

(*Id.*) Plaintiff telephoned MPOETC and informed them of Dr. Siegfried's test results, but was told that there were no exceptions to the initial test and that to be certified he needed to have a job offer. (Pl.'s Dep. at 64-67.)

On November 14, 2006, Plaintiff's lawyer, Mr. Brian Wiley, sent a letter to Major John

Gallaher, Executive Director of MPOETC.  (Pl.'s Dep. Ex. Lekich-7 [Letter of Nov. 14, 2006 from Wiley to Gallaher]; Pl.'s Dep. at 72.)  The letter again explained that Dr. Siegfried had evaluated Mr. Lekich and had concluded that he had only a "slight deficiency in [his] ability to differentiate between *shades* of red, and *shades* of green."  (Pl.'s Dep. Ex. Lekich-7.)  It also asserted that "[t]he perceived disability of mild red/green color deficiency has been determined <u>not</u> to be a bar to law enforcement employment in cities of the first class, like Philadelphia and Pittsburgh, Pennsylvania." (*Id.*)  The letter concluded by requesting certification, a waiver, or "a medically substantiated demonstration that this perceived deficiency prevents, or is an actual bar to performing the duties and responsibilities of a Pennsylvania certified law-enforcement officer."  (*Id.*)  The letter was sent with various attachments, including the original physical examination reports and Dr. Siegfried's October 2006 letter report.  (Pl.'s Dep. Ex. Lekich-7; Pl.'s Dep. at 72.)  These were the first documents Plaintiff sent to MPOETC.  (Pl.'s Dep. at 73.)

During a subsequent teleconference with MPOETC representatives, Plaintiff was advised that another color screening test, the Farnsworth-Munsell 100-Hue test was available and that, should he receive another job offer, he could pursue that option and submit the results through a hiring police department.  (Young. Dep. at 34-36; Def. Miller's Statement of Undisputed Facts ¶ 33.)  He was also told that MPOETC could make a certification decision only after it received a certification application from a hiring police department.  (Pl.'s Dep. at 87-88.)  Around the time of this conference call, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission (PHRC).  (*Id.* at 89; *Id.* Ex. Lekich-8 [Letter of Jan. 2, 2007 from PHRC to Brian K. Wiley].)

In January 2007, Plaintiff's attorney sent two letters directly to Gallaher.  (Pl.'s Mot. Ex. 16 [Letter of Jan. 15, 2007 from Wiley to Gallaher] & Pl.'s Dep. Ex. Lekich-9 [Letter of Jan. 23, 2007

6

from Wiley to Gallaher].)  The earlier letter stated:

> This correspondence follows my communication with your office regarding the requested medical documentation on behalf of Eric Lekich.  As you are aware your office indicated that a successful Farnsworth Bentley 100 vision hue color eye test would suffice to enable Mr. Lekich to obtain certification.  He recently completed the test itself and we shall forward to you the results of that test shortly.

(Letter of Jan. 15, 2007 from Wiley to Gallaher.)  The second letter included as an attachment a January 11, 2007 letter from Dr. Siegfried regarding the results of a Farnsworth-Munsell 100-Hue Color Vision test.  (Pl.'s Dep. Ex. Lekich-9.)  Dr. Siegfried's letter states that the results of this test "are the same as those reported earlier, from the administration of the Nagel Anomaloscope." (*Id.*) According to the letter, Plaintiff has a "mild form of inherited color deficiency" and "should not have any problems distinguishing Greens, Yellows, and Reds." (*Id.*)  Relying on this report, the second letter to Major Gallaher requested "a waiver on behalf of Mr. Lekich" and the granting of certification. (*Id.*)  The record before this Court contains no response to this letter.  According to MPOETC, it never received an application from a hiring police department for Mr. Lekich's certification and therefore never made a decision regarding his certification. (Young Dep. at 37-38, 45.)

Plaintiff's attorney continued to communicate with Tara L. Patterson, Assistant Counsel for the Pennsylvania State Police, who handles certain legal matters for MPOETC.  (*See* Decl. of Tara L. Patterson ¶¶ 1-2.)  Plaintiff's attorney informed Ms. Patterson that "Mr. Lekich has been preliminarily offered a job" and asked her to contact him to discuss MPOETC certification.  (*Id.* ¶ 17 & Attach. C [Letter of May 4, 2008 from Wiley to Patterson].)  According to Patterson, she spoke with Wiley by phone on May 17, 2007 and again informed him that a certification application packet must be submitted by the hiring police department.  (*Id.* ¶ 18.)  A subsequent letter sent by Wiley

to Patterson presented a settlement demand on behalf of Lekich.  (*Id.* ¶ 20 & Attach. D.)  The letter, which references a "recently completed fact-finding conference . . . before the Pennsylvania Human Relations Commission," demanded "a Waiver of the challenged color vision/hue fitness requirement." (*Id.*)  It also demanded attorney fees, costs, and expenses and offered in exchange the voluntary discontinuance of the action before the PHRC and an agreement not to seek relief in federal court.  (*Id.*)  Patterson responded by reiterating that, pursuant to its governing regulations, MPOETC could only review requests for certification submitted by an individual who has obtained employment as a police officer and had an application for certification submitted by the employing police department.  (*Id.* ¶ 21 & Attach. E.)  Ms. Patterson "informed Mr. Wiley that MPOETC had no choice but to reject his demand." (*Id.* ¶ 22.)

Plaintiff's Amended Complaint contains five counts: (1) claims under the ADA, alleging the denial of reasonable accommodations and reprisal disability discrimination; (2) claims under the RA; (3) Fourteenth Amendment equal protection claims under a "class of one" theory; (4) claims under the PHRA; and (5) a request for relief in the form of back pay; front pay; payments for fringe benefits; compensatory and punitive damages; damages for pain and suffering, and professional and personal embarrassment; attorney's fees, costs, and expenses; and "complete expungement and correction of all of plaintiff's employment and governmental records."  (Compl. ¶¶ 26-62.)

On May 6, 2008 Defendant Miller's Motion to Dismiss was granted with regard to Plaintiff's Fourteenth Amendment monetary damages claims.  On May 21, 2008 the parties stipulated to dismiss the ADA and PHRA claims as to Doylestown only.  Each of the three parties filed for summary judgment on February 2, 2009.

## II.      STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248.

In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).  Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

At the same time, to avoid summary judgment, "a nonmoving party must adduce more than a mere scintilla of evidence in its favor." *Williams v. Borough of W. Chester, Pa.,* 891 F.2d 458, 460 (3d Cir. 1989) (citing *Anderson*, 477 U.S. at 249).  Although credibility determinations remain the function of the jury, a judge considering a summary judgment motion by a defendant in a civil case "unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 252 (1986) (quoting *Improvement Co. v. Munson*, 81 U.S. 442,

448 (1871)).

## III.    DISCUSSION

### A.    Defendant Miller's Motion for Summary Judgment

Defendant Miller moves for summary judgment on all four of Plaintiff's claims against him. He asserts that the Eleventh Amendment bars Plaintiff's ADA and PHRA claims and that RA claims cannot be brought against individuals.  Miller also contends that he is entitled to relief on the merits on all three of these claims because no reasonable jury, based on the record, could find he violated Plaintiff's rights.  Finally, Miller claims that the undisputed facts show that he did not violate Plaintiff's equal protection rights.

#### 1.    The Eleventh Amendment bars Plaintiff's ADA claim

The Eleventh Amendment to the U.S. Constitution declares: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  The Supreme Court has extended the Eleventh Amendment to prohibit lawsuits brought against a state by its own citizens.  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997); *Hans v. Louisiana*, 134 U.S. 1 (1890).  Absent their consent, the Eleventh Amendment immunizes states from lawsuits brought by private parties in federal courts.  *Haybarger v. Lawrence County Adult Prob. and Parole*, 551 F.3d 193, 197 (3d Cir. 2008) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)); *Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 194-95 (3d Cir. 2008)).  It also bars lawsuits against subunits of a State.  *Haybarger*, 415 U.S. at 198; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or

10

departments is named as the defendant is proscribed by the Eleventh Amendment.").

Plaintiff filed this litigation against Miller in his official capacity, as chairman of MPOETC. The Supreme Court has emphasized that "suits against state officials in their official capacity . . . should be treated as suits against the State," noting that "the real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Nelson v. Com. of Pa. Dep't of Pub. Welfare*, 244 F.Supp.2d 382, 391 (E.D. Pa. 2002) ("The Eleventh Amendment precludes suits for retrospective monetary relief against state officials in their official capacity.") (citation omitted).   Accordingly, since MPOETC is a state agency, the Eleventh Amendment bars this lawsuit against Miller in his official capacity. *See Speck v. City Of Phila.*, Civ. A. No. 06-4976, 2008 WL 115005, *3 (E.D. Pa. 2008) ("The Pennsylvania State Police is the agency of the Commonwealth responsible for the administration of the Municipal Police Officer Education and Training Commission, which is also a Commonwealth agency."); *see also Williams v. Pa. State Police Bureau of Liquor Control Enforcement*, 108 F. Supp. 2d 460, 465 (E.D. Pa. 2000) (finding that Bureau of Liquor Control Enforcement "is part of the Pennsylvania State Police and a state agency of the Commonwealth of Pennsylvania" and therefore entitled to Eleventh Amendment immunity from suit under ADA).

Eleventh Amendment immunity is not absolute. *Haybarger*, 551 F.3d at 198.  A state may consent to waive immunity. *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999).  However, as Defendant Miller points out, Pennsylvania has, with the exception of nine specific situations, expressly retained the immunity from suit in federal court provided by the Eleventh Amendment.  *See* 42 PA. CONS. STAT. § 8521(b). These nine exceptions do not include claims under the ADA. *Boone v. Pa. Office of Vocational Rehab.*, 373 F.Supp.2d

11

484, 500 (M.D. Pa. 2005).  Although Congress may "require a waiver of immunity as a condition

for receipt of federal funds," *Haybarger*, 551 F.3d at 198, there is no evidence Congress has

required states to waive immunity under the ADA.  To the contrary, the Supreme Court has declared

that lawsuits against a state for money damages to recover for failure to comply with Title I of the

ADA are barred by the Eleventh Amendment.  *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356,

360 (2001).

The Supreme Court's decision in *Ex Parte Young* provides an exception to Eleventh

Amendment immunity for suits seeking prospective injunctive relief.  209 U.S. 123, 159-60 (1908).

Plaintiff's Amended Complaint requests "[c]omplete expungement and correction of all of plaintiff's

employment and government records."  (Am. Compl. ¶ 62.)  Plaintiff does not indicate what, if any,

errors in the record he seeks to have corrected.  Although this form of relief is not barred by the

Eleventh Amendment, the Court refuses to grant it since, as discussed *infra*, Plaintiff's claims are

without merit.

For these reasons, the Court grants Defendant Miller summary judgment on Plaintiff's ADA

damages claims.

### 2.  *The Eleventh Amendment bars Plaintiff's PHRA claim*

The Eleventh Amendment also bars state law claims brought in a federal court pursuant to

supplemental jurisdiction.  *Pennhurst*, 465 U.S. at 121.  Although Pennsylvania's legislature has

waived sovereign immunity from PHRA claims brought in Pennsylvania commonwealth courts, see

*Mansfield State College v. Kovich*, 407 A.2d 1387, 1388 (Pa. Commw. Ct. 1979), it has not waived

its Eleventh Amendment immunity from lawsuits in federal courts.  *Dennison v. Pa. Dep't of*

*Corrections*, 268 F. Supp. 2d 387, 405 (M.D. Pa. 2003).  Numerous courts in this district have held

that the Eleventh Amendment affords state agencies immunity from lawsuits in federal court on PHRA claims. *See, e.g., Nelson*, 244 F. Supp. 2d at 391 (citing *Moore v. Pa. Dep't of Military and Veterans Affairs,* 216 F. Supp. 2d 446, 454 (E.D. Pa. 2002); *Williams*, 108 F. Supp. 2d at 465; *Fitzpatrick v. Pennsylvania,* 40 F. Supp. 2d 631, 635 (E.D. Pa. 1999); *Dill v. Pennsylvania,* 3 F. Supp. 2d 583, 587-88 (E.D. Pa. 1998)). As the *Williams* court succinctly declared: "a plaintiff may never pursue a PHRA claim against Pennsylvania or its agencies in federal court." 108 F. Supp. 2d at 465. Because Plaintiff's PHRA claims against Defendant Miller, in his official capacity, are treated as claims against MPOETC, a state agency, they are similarly barred by the Eleventh Amendment. *See Nelson*, 244 F. Supp. 2d at 391-92.

    3. *Plaintiff's claim that he was "regarded as" disabled lacks merit and Miller therefore is entitled to summary judgment on the merits of Plaintiff's ADA, RA and PHRA claims*

   Plaintiff's claims against both Defendants rely upon the allegation that he was "regarded as" disabled and unlawfully discriminated against on this basis, in part through the denial of a reasonable accommodation. (Pl.'s Mot. at 5; Pl.'s Am. Compl. ¶ 28.) He specifically contends that MPOETC "refused to engage in interactive process and unlawfully retaliated against plaintiff following his request for accommodation." (Pl.'s Mot. at 6.) But Plaintiff has failed to establish the elements of a disability discrimination claim, under the terms of the ADA, RA, or PHRA, against Defendant Miller.[3]  Miller is therefore entitled to summary judgment on all three claims.

---

   [3] The scope of the term "disability" under the ADA was significantly expanded by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), which took effect on January 1, 2009. *See Rohr v. Salt River Project*, No. 06-16527, 2009 WL 349798, *8-9 (9th Cir. Feb. 13, 2009). However, Congress did not indicate the law applies retroactively and Plaintiff has not argued he is bringing his claims under the ADAAA. This case is governed by the law in effect at the time of the incidents in question, including the Supreme Court's decision in *Sutton v. United Air Lines*, 527 U.S. 471 (1999), which was expressly overturned by Congress

The Third Circuit applies the following standard for evaluating discrimination claims under

the RA:

> To make out a prima facie case of discrimination under the Rehabilitation Act, the
> employee bears the burden of demonstrating (1) that he or she has a disability, (2)
> that he or she is otherwise qualified to perform the essential functions of the job, with
> or without reasonable accommodations by the employer; and (3) that he or she was
> nonetheless terminated or otherwise prevented from performing the job. The plaintiff
> must make a prima facie showing that reasonable accommodation is possible. If the
> plaintiff is able to meet these burdens, the defendant then bears the burden of
> proving, as an affirmative defense, that the accommodations requested by the
> plaintiff are unreasonable or would cause an undue hardship on the employer.

*Donahue v. Consol. Rail Corp.,* 224 F.3d 226, 229 (3d Cir. 2000).  This standard is nearly identical

to that governing ADA claims and PHRA claims.  *Id.*; *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d

296, 306 (3d Cir. 1999); 29 U.S.C. § 794 (d) (providing that the standards used to evaluate a claim

of employment discrimination under the RA "shall be the standards applied under title I of the

Americans with Disabilities Act of 1990 . . . .").

Plaintiff's claims under the ADA, PHRA, and RA must be dismissed because Plaintiff has

failed to offer any facts from which a reasonable jury could conclude that Plaintiff is disabled or was

"regarded as" disabled.  The ADA defines a "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the
> major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); *see also Sutton,* 527 U.S. at 478.

Plaintiff acknowledges that color blindness is not recognized as a disability.  (Pl.'s Mot. at

10.)  He instead "alleges that he satisfied the definition of 'disability' when defendants wrongfully

---

through the ADAAA.

'regarded' plaintiff as disabled and the plaintiff's colorblindness was a 'non-limiting' impairment that the defendants mistakenly believed limited the major life activity of 'seeing.'" (*Id.*) Establishing a disability under the "regarded as" prong of § 12102(2) requires that a plaintiff demonstrate that he or she:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

*Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 766 (3d Cir. 2004) (citing *Taylor v. Pathmark Stores, Inc.,* 177 F.3d 180, 188 (3d Cir.1999) (quoting 29 C.F.R. § 1630.2(1))); *see also Sutton*, 527 U.S. at 489 (combining first and third possible definitions above in stating there are "two apparent ways" to show an individual is "regarded as" disabled).

Plaintiff contends that Defendants "mistakenly believed [Plaintiff's color blindness] limited the major life activity of 'seeing.'" (Pl.'s Mot. at 10.)  However, Plaintiff points to nothing in the record that would support this assertion.  The statement in his Response to Defendant MPOETC Interrogatories, "Defendants MPOETC and Doylestown Borough both wrongfully perceived and regarded me as disabled in the major life activities of seeing, working, reading, and deciphering vision," represents nothing more than a bare assertion and is insufficient to overcome a motion for summary judgment. (Pl.'s Dep. Ex. Lekich-11.)  Nor is there anything else in the record that offers any basis for a reasonable jury to conclude that Defendants believed Plaintiff's color blindness substantially limited a major life activity.

Plaintiff's counsel was asked about this evidentiary lacuna during oral argument.  His only

15

proffered evidence that Defendants regarded his client as disabled was the claim that they were aware of Mr. Lekich's color blindness through the results of the first color vision test and the contents of the letters from Dr. Siegfried.  There was some dispute regarding whether and when both Defendants received these materials.  Irrespectively, the evidence only indicates that Defendants believed, correctly according to all vision tests in the record, that Plaintiff lacked normal color vision, as required for certification as a police officer.[4]  This is insufficient for Plaintiff to overcome summary judgment.  *See Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) ("the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action."); *Wilson v. Pa. State Police Dep't*, Civ. A. No. 94-6547, 2004 WL 875573 (E.D. Pa. Mar. 19, 2004) (granting summary judgment because plaintiffs failed to offer facts showing that defendants regarded plaintiffs as substantially limited in a major life activity, rather than simply unable to fulfill the requirements of a particular job).

Plaintiff also offers no evidence to could support his assertion that Defendants believed his color blindness substantially limited his ability to work: "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton*, 527 U.S. at 491; *see also Taylor*, 177 F.3d at 188 ("Several cases support our conclusion that, in general, an employer's

---

[4] Plaintiff does not assert that the Pennsylvania Administrative Code's requirement that police officers possess "normal depth and color perception" is per se a violation of the ADA, a position he confirmed during oral argument.  As the Supreme Court has declared, "By its terms, the ADA allows employers to prefer some physical attributes over others and to establish physical criteria.  An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." *Sutton*, 527 U.S. at 490.

perception that an employee cannot perform a wide range of jobs suffices to make out a 'regarded as' claim.").  Plaintiff does not allege that he cannot perform a wide range of jobs and does not offer evidence indicating Defendants believed this was the case.

This case is also distinguishable from cases in which courts have found that sufficient evidence was presented to establish a genuine issue of material fact on the question of whether an individual was "regarded as" disabled.  In *Deane v. Pocono Medical Center*, the Third Circuit found there was sufficient evidence to avoid summary judgment when deposition testimony from the defendants "document[ed] confusion as to the extent of [Plaintiff's] physical capacity, with regard to pushing, pulling, and lifting" and evidence indicated defendant "fundamentally misunderstood and exaggerated the limitations [caused by Plaintiff's injury]."  142 F.3d 138, 145 (3d Cir. 1998).  This evidence offered in *Deane* indicated defendants regarded plaintiff as "substantially more physically impaired than she actually was . . . ."  *Id.*; *see also Taylor*, 177 F.3d at 188 (reversing district judge's grant of judgment as a matter of law to employer on "regarded as" claim when defendant-employer, in a letter to plaintiff, described him as having permanent and severe physical limitations, even though doctor's records stated aggravated impairment was only temporary).  No such evidence has been offered in this case regarding the Defendants' perceptions of Plaintiff's color blindness.  Plaintiff has therefore failed to satisfy the first prong of a disability discrimination claim.

Furthermore, Plaintiff's claims fail to satisfy the third prong of the analysis because MPOETC was never in a position to make a certification decision regarding Plaintiff.  The statutes and regulations governing MPOETC's activities indicate that applications for certification are assembled by a hiring police department and then forwarded to MPOETC for certification.  37 PA. CODE § 203.15(c).  Defendant Miller's Statement of Undisputed Facts, which Plaintiff did not

17

dispute and which are therefore deemed admitted, confirms this procedure. (Def. Miller's Statement of Undisputed Facts ¶ 4.)  MPOETC staff also testified that this is the agency's certification procedure.  (Young Dep. at 37, 45; Gallaher Dep. at 50).  Since MPOETC never received an application for certification from a police department on behalf of Plaintiff, it was never in a position to make a certification decision and could not be found to have committed an adverse employment action.

Moreover, because Plaintiff is not disabled within the definition of the relevant statute, he is not entitled to a reasonable accommodation.  *See* 42 U.S.C. § 12112(b)(5)(A) (an employer must provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual *with a disability* who is an applicant or employee.") (emphasis added).  Nor was Plaintiff, having failed to establish he was regarded as disabled, entitled to interactive process. Absent an employee's disability, whether real or perceived, an employer has no duty to engage in interactive process.  As the Third Circuit has explained:

> [t]o show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Taylor*, 184 F.3d at 319-20 (citations omitted); *see also Williams*, 380 F.3d at 771-72.  Since Plaintiff has failed to produce any evidence that he was actually disabled or regarded as disabled, it is impossible for him to show that his employer knew about his disability and then failed to participate in an interactive process required by law.

For these reasons, Defendant Miller is entitled to summary judgment on Plaintiff's disability

discrimination claims.[5]

Plaintiff's retaliation claims are also meritless and therefore dismissed. (Pl.'s Mot. at 14, 17.) The Third Circuit has held that "a person's status as a 'qualified individual with a disability' is not relevant in assessing the person's claim for retaliation under the ADA." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 498 (3d Cir. 1997). Plaintiff asserts that there is "no genuine factual dispute that defendants admit termination plaintiff [sic] from his employment after plaintiff's requests for interactive process solely on the grounds of his color blindness." (*Id.* at 17.)

The Third Circuit offers the following standard for evaluating whether a plaintiff has established a prima facie case of retaliation:

> [A] plaintiff must show: '(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.' *Krouse*, 126 F.3d at 500.

*Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002).

Plaintiff's repeated requests for an accommodation represent his alleged protected employee activity. (Pl.'s Mot. at 14.) Assuming *arguendo* that these requests represent protected activity, Plaintiff can point to no adverse action taken by MPOETC, which was never in a position to make a certification decision as to Plaintiff. Moreover, Plaintiff was terminated from his conditional employment prior to his requests for reasonable accommodation.[6] Accordingly, Plaintiff's retaliation

---

[5] Because Plaintiff's RA claim against Defendant Miller fails on the merits, the Court need not address Defendant Miller's assertion, in his Motion for Summary Judgment, that the RA does not apply to individuals.

[6] Despite having pled retaliation solely under the ADA and the PHRA, Plaintiff, in his Motion for Summary Judgment, purports to have brought an RA retaliation claim. (*See* Am. Compl. ¶¶ 26, 50; Pl.'s Mot at 14.) Any RA retaliation claim against MPOETC is dismissed for the above reasons. If Plaintiff had brought retaliation claims under the RA against Doylestown,

claims, which simply reframe the allegations underlying his claims of unlawful discrimination, fail.

> 4.      *Miller is entitled to summary judgment on Plaintiff's equal protection claim*

Plaintiff's equal protection claim is brought under a "class of one" theory.     To state a claim under the "class of one" theory a plaintiff must allege: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Plaintiff's claim relies upon statements made Dr. Siegfried, who stated in an October 4, 2006 letter:

> I regularly test candidates for the City of Philadelphia, PA who fail the color vision screening test administered as part of their physical examination.   These are candidates for police, fire, and corrections officers.   For the past 10 years, approximately, the City has accepted Anomalous (mild) color defects in these three categories of employment, but has rejected Dichromats (severe).

(Pl.'s Dep. Ex. Lekich-6.)

Dr. Siegfried made a similar claim in a June 24, 2008 letter to Plaintiff's attorney:

> For approximately 20 years I have tested all of the applicants to the City of Philadelphia Police, Fire, Corrections Department, SEPTA drivers, etc who fail the color vision part of the Employee Medical Examination.  The city has the rule that they will accept a mild color deficit . . . and they will not accept a severe deficit . . . .

(Pl.'s Mot. Ex. 5 [Letter of June 24, 2008 from Siegfried to Wiley].)

Nothing in the record corroborates Dr. Siegfried's claims or, more importantly, establishes

---

they would likewise be dismissed.  Plaintiff's "repeated requests" for accommodation were made *after* Doylestown withdrew its conditional offer of employment.  This fact is fatal to Plaintiff's purported RA retaliation claim.  *See Evans v. Maax-KSD Corp.*, No. 08-1627, 2009 WL 282023, at *1 (3d Cir.  Feb. 6, 2009) (affirming grant of summary judgment when record showed that defendant-employer had "never been served with a charge of discrimination or a request for accommodation prior to terminating [plaintiff's] employment").

that these individuals were certified by MPOETC. (*See* Pl.'s Dep. at 103.) Plaintiff conceded at his deposition that his only information regarding color blind individuals who received jobs as police officers for Pennsylvania municipalities came from Dr. Siegfried. (*Id.*) Indeed, Plaintiff could not recall whether Dr. Siegfried had made any statement regarding whether or not these police officers were certified by MPOETC. (*Id.* at 62.) Even if accepted as true, Dr. Siegfried's letters provide no basis for a factual finding that MPOETC treated Plaintiff differently from similarly situated individuals. The letters claim only that an exception was made by the City of Philadelphia, but does not reference MPOETC. In addition, as will be important with respect to Defendant Doylestown Borough, the individuals referenced in Dr. Siegfried's letter were hired by the City of Philadelphia and not Doylestown Borough. Philadelphia's hiring practices are irrelevant here.

Even assuming that the other individuals referenced in Dr. Siegfried's letter had obtained MPOETC certification, Plaintiff cannot establish that he was similarly situated to them and in relation to MPOETC. Since obtaining certification requires that an individual have both a job offer and a complete application submitted to MPOETC by a hiring police department, which Plaintiff never had, he is not similarly situated to these individuals. For these reasons, Miller is entitled to summary judgment on Plaintiff's equal protection claim.

### B. Defendant Doylestown Borough's Motion for Summary Judgment

Plaintiff voluntarily stipulated to dismissal of his ADA and PHRA claims against Doylestown. The only claims remaining against this Defendant are an RA claim and a Fourteenth Amendment claim based on a "class of one" theory.

> 1. *Plaintiff's Rehabilitation Act claims against Doylestown must be dismissed as Plaintiff is unable to establish a claim of discrimination and has failed to*

*exhaust his administrative remedies*

The Court grants Doylestown summary judgment on Plaintiff's RA claims on the merits for the reasons discussed above with reference to these claims against Defendant Miller.  There is no evidence in the record to support Plaintiff's claim that Doylestown "regarded him" as disabled. Instead, the record simply indicates that Doylestown believed, based on the physical examination results presented to it by Plaintiff and Plaintiff's own statements, that Plaintiff was ineligible for certification by MPOETC, as required by 53 PA. CONS. STAT. § 2167,  and therefore could not be hired as a police officer.  (Pl.'s Dep. at 42-43.)

Doylestown further contends that Plaintiff's RA claims against it must be dismissed because he has failed to plead, and the record provides no evidence to show, that he has his exhausted his administrative remedies, as required by § 504 of the Rehabilitation Act.[7]  (Def. Doylestown Borough's Resp. to Pl.'s Mot for Summ. J., at 2.)  Plaintiff did not address this exhaustion issue in his papers.  At oral argument, however, he twice stated that the RA did not require exhaustion of administrative remedies, but did not offer any cases that might support this assertion.  In *Zankel v. Temple University*, a suit against a private university, the Third Circuit affirmed a district court's decision dismissing a claim under § 504 due to the plaintiff's failure to file an administrative complaint. 245 F.App'x 196, 198 (3d Cir. 2007).  The court stated that "[l]ike an ADA employment discrimination claimant, a § 504 claimant must also exhaust all administrative remedies in accordance with Title VII."  *Id.* at 199.  Given this holding, the Court concludes that Plaintiff is required to exhaust his administrative remedies.

---

[7] While Plaintiff's Amended Complaint states that Count II brings claims under §§ 501-504 of the RA (Pl.'s Am. Compl. ¶¶ 34-37), his Motion for Summary Judgment states only that he brings a claim under § 504 (Pl.'s Mot. at 5).

Plaintiff has provided no evidence that he has exhausted his administrative remedies against Doylestown, or even establishing that he ever brought an administrative action against this Defendant. The only material Plaintiff has produced regarding a PHRC or EEOC claim is a copy of Defendant MPOETC's answer to his administrative complaint. (Pl.'s Mot. for Summ. J. Ex. 10 [Def. MPOETC's Ans. to PHRC Compl.].) The caption of this document indicates that the administrative claim was brought only against MPOETC and not against Doylestown . (*Id.*) No "right to sue" letter, or any other evidence of an administrative proceeding against Doylestown, has been produced. Accordingly, Plaintiff's failure to exhaust administrative remedies provides an additional basis for granting summary judgment on Plaintiff's RA claims against Doylestown.

2.   *Plaintiff's equal protection claim against Doylestown fails*

Plaintiff offers no evidence that Doylestown has ever hired or employed a police officer with a color vision deficiency that renders him or her similarly situated to Plaintiff. Plaintiff's Amended Complaint alleges that "Defendant had no rational basis for treating plaintiff differently than other similarly situated police officers in Pennsylvania, who were granted 'waivers' and thereby certified to be employed as police officers in the Commonwealth of Pennsylvania." (Pl.'s Am. Compl. ¶ 44.) Again, this claim appears to rely upon the letters of Dr. Siegfried, which clearly reference individuals hired by the Philadelphia Police Department and make no mention of Doylestown. Plaintiff provides no indication, nor could he, that Doylestown plays any role in granting waivers to police officers throughout the Commonwealth, or even in Philadelphia specifically. Moreover, the relevant state statutes provide no authority for Doylestown, or any municipality, to waive the requirement of MPOETC certification for police officers. Absent any evidence of similarly situated police officers or applicants in Doylestown there is no basis upon which a finder of fact could conclude that

23

Defendant was "treated differently from other similarly situated" individuals.[8]  The Court therefore grants summary judgment to Doylestown on this claim.

**C.     Plaintiff's Motion for Summary Judgment**

Because the Court has granted summary judgment for Defendants on all claims, it must also deny Plaintiff's Motion for Summary Judgment.  Plaintiff's arguments in support of his motion have been addressed in the Court's discussion of Defendants' motions.

**IV.     CONCLUSION**

In sum, Plaintiff has provided no evidence upon which a reasonable jury could find that the actions of either Defendant violate federal or state anti-discrimination laws or the Fourteenth Amendment's equal protection clause.  As such, there are no grounds for Plaintiff's claims and the Court accordingly grants in full both Defendants' motions for summary judgment and denies Plaintiff's motion.  An appropriate Order follows.

---

[8] When asked at oral argument to identify the similarly situated individuals treated differently by Defendant Doylestown Borough Plaintiff's counsel appeared to blend his equal protection and Rehabilitation Act claims.  He contended that Doylestown Borough treated Plaintiff differently than "people who are entitled to interactive process under the ADA and PHRA."

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ERIC LEKICH,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MUNICIPAL POLICE OFFICERS** | : | |
| **EDUCATIONAL TRAINING** | : | |
| **COMMISSION (MPOETC), et al.,** | : | **No. 08-1048** |
| **Defendants.** | : | |

## ORDER

**AND NOW**, this **26**th day of **February, 2009**, upon consideration of Defendants'

Motions for Summary Judgment, Plaintiff's Motion for Summary Judgment, all parties'

Responses in Opposition and supplemental materials, the February 20, 2009 oral argument on

these motions, and for the foregoing reasons, it is hereby **ORDERED** that:

1.  Defendant Jeffrey Miller's Motion for Summary Judgment (Document No. 41) is

    **GRANTED**.

2.  Defendant Doylestown Borough's Motion for Summary Judgment (Document No.

    44) is **GRANTED**.

3.  Plaintiff Eric Lekich's Motion for Summary Judgment (Document No. 43) is

    **DENIED**.

4.  The Clerk of Court is directed to close this case.

**BY THE COURT:**

**Berle M. Schiller, J.**